IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CHRISTOPHER DALLUM,        ) | |
| ) | |
| Petitioner-Defendant,    ) | |
| ) | |
| v.                          ) | Case Nos. 07-CR-164-BBC |
| ) | 11-CV-67-BBC |
| UNITED STATES OF AMERICA  ) | |
| ) | |
| Respondent-Plaintiff.    ) | |
| ) | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S SECTION 2255 PETITION

Introduction

Christopher Dallum (Dallum) moves to vacate his sentence and conviction pursuant to Title 28, United States Code, Section 2255.  Dallum claims that he was denied effective assistance of counsel because his attorney, Reed Cornia: (1) filed an unacceptable appellate brief; (2) failed to request that time spent in custody would be credited to his federal sentence; (3) failed to respond to the government's claim at sentencing that the PSR was inaccurate; (4) failed to argue against "irrelevant" enhancements; (5) failed to use psychological and computer experts; and (6) failed to give him sufficient time to consider the plea letter.  Dallum raises two additional issues that are unrelated to Attorney Cornia's effectiveness: that the Magistrate intimidated him into pleading guilty and that the United States threatened additional superseding indictments.  As explained after the facts and applicable law, Dallum's petition is meritless and should be denied.

Facts

      Christopher Dallum (Dallum), Superior, Wisconsin, began touching "Individual A," a minor and his step-daughter's best friend, during sleep-overs at the Dallum residence. (PSR ¶16). When she turned fifteen, Dallum and "Individual A" began having sexual intercourse. (PSR ¶¶ 9 and 16).

      In September 2006, "Individual A's" mother grew suspicious of Dallum's more-than-paternal interest in her minor daughter and called the Superior Police Department. (PSR ¶ 9). A forensic analysis of "Individual A's" computer confirmed that Dallum, using the screen name "imasluttyboy13," used the Internet to show "Individual A" his privates, to view her breasts, and to arrange sexual liaisons. (PSR ¶ 11 and 22). On December 15, 2006, the Superior Police Department executed a search warrant at Dallum's business, an automotive repair shop, in Superior, Wisconsin. (PSR ¶ 13). Dallum's work place consisted of a garage and an attached office. (R. 69, pp. 1-2). Inside Dallum's office, the officers found a plastic bag stashed in a filing cabinet. *Id.* Within the bag were photographs depicting Dallum and his ex-wife without clothes; surreptitiously-made videotapes of Dallum's step-daughter; and ten hand-labeled DVDs, each containing child pornography. (*Id.;* PSR ¶¶ 13 and 15). Dallum's ex-wife, Michelle Dallum, identified Dallum's handwriting on the DVDs. (PSR ¶ 25). Dallum was visible in the videos of his step-daughter. He can be seen adjusting the camera before the step-daughter, aged twelve to fifteen when filmed, entered the room where he hid the camera. (R. 69, p. 2). The videos show the step-daughter changing, going to

the bathroom, and showering. (*Id.*, p. 2; PSR ¶¶ 15 and 19).

The computer in Dallum's office (the office computer) also contained child pornography. (PSR ¶ 25; R. 87, p. 1; R. 90, p. 1). Some of the child pornography images found within the office computer were stored in peer-to-peer[1] file sharing folders within Dallum's computers. (R. 87, p. 1; R. 90, pp. 1-2). Dallum used these file sharing programs to collect child pornography from the internet. (R. 87, pp. 1-2). Given the way these applications were configured on Dallum's office computer, the child pornography was available for world-wide internet distribution to anyone with the same peer-to-peer software. (*Id.*)

The officers who analyzed the electronic storage media found in Dallum's office--the ten DVDs and the office computer--found a total of 20 video files and 1,642 still images of children engaged in sexually explicit conduct. (PSR, ¶ 24; R. 87, p. 1). Contained within the DVDs were videos and images of little girls forced to engaged in vaginal, oral, and anal intercourse with adult men. (PSR ¶25). One video depicts a little girl bound hand and foot sitting on a stool with her vagina exposed. (PSR ¶ 25). The video next shows the little girl, still bound, suspended from the ceiling by ropes. (*Id.*) Another of Dallum's hand-labeled DVDs contains an image of a pre-pubescent female in bondage performing oral sex on a grown man. (*Id.*)

The Superior Police Department later discovered an older computer of Dallum's (the old computer) stored in his ex-wife's garage. (PSR ¶ 12). Officers discovered child

---

[1] Specifically, Dallum used the eDonkey and Morpheus file sharing programs. (R. 87).

pornography images on that computer to include images stored in peer-to-peer file sharing programs. (PSR, ¶ 23; R. 87, p. 1). Like those described above, the images in the file sharing programs were available to others with the same software while the computer was connected to the internet. The officers analyzing the old computer found 51 video files and 873 still images of children forced to engage in sexually explicit conduct. (PSR ¶ 23).

On September 5, 2008, ten days before trial, Dallum pled guilty to two counts of possessing child pornography, specifically, Counts 2 and 3 of the second superseding indictment. (R. 81 and 82).

A presentence report filed on October 10, 2008, recommended a series of adjustments under United States Sentencing Guideline Section 2G2.2. The adjustments applied because: Dallum possessed images of children younger than twelve engaged in sexually explicit conduct (§ 2G2.2(b)(2)(PSR ¶ 34)); Dallum possessed sadistic, pornographic images of children (§ 2G2.2(b)(4) (PSR ¶ 35)); Dallum possessed more than 600 images of child pornography (§ 2G2.2(b)(7)(D)(PSR ¶ 38)); Dallum had repeatedly sexually assaulted "Individual A," a minor (§ 2G2.2(b)(5)(PSR ¶ 36)); and Dallum had used a computer to collect child pornography ((§ 2G2.2(b)(2)(PSR ¶ 37)). A final adjustment was noted in the addendum: since Dallum's computers were configured with peer-to-peer software to download and to distribute child pornography, a two level adjustment pursuant to § 2G2.2(b)(1)(3)(F) applied. (R. 90, pp. 1 and 2).

4

On November 14, 2008, Dallum appeared for sentencing. Dallum contended, through Attorney Cornia, that the guidelines resulted in an unfairly draconian sentence. This Court stated:

> I think, Mr. Dallum, you do present a danger to the community. On the other hand, I do think that what Mr. Cornia says about the guidelines has some real substance to it. I think that the way they're calculated and the way they build upon each other is draconian and I'm not convinced that going to the full guidelines in this case is appropriate under the circumstances. I have concerns, but I think these concerns can be met with a lower sentence.

(R. 105, pp. 25-26).

This Court gave Dallum a 144-month sentence to run concurrently to his Douglas County, Wisconsin sentence. (R. 97, p. 2).

Dallum appealed. The Seventh Circuit rejected Dallum's broadside attack on the sentencing guideline relating to child pornography. (R. 111). While the Seventh Circuit was critical of Cornia's brief, the opinion makes clear that the real problem was Dallum himself. The Seventh Circuit held that his sentence was extremely lenient "considering his conviction for sexual assault of a 16-year-old female and his possession of materials depicting children engaged in sadistic and masochistic sexual activity. Moreover, his sentence is 66 months below the properly calculated guidelines range of 210 to 262 months' imprisonment and only two years above the 10-year statutory minimum sentence." (R. 111, p. 3).

Applicable Law

Section 2255 relief is limited to "an error of law that is jurisdictional,

constitutional, or constitutes a 'fundamental defect that inherently results in a complete miscarriage of justice.'" *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991) (citations omitted). Collateral relief under § 2255 is not a substitute for direct appeal. *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000). Rather, relief is only "available if a prisoner can demonstrate that there are flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude, or resulted in a complete miscarriage of justice." *Boyer v. United States*, 55 F.3d 296, 298 (7th Cir. 1995).

Unsupported allegations are insufficient to trigger a Section 2255 evidentiary hearing. *Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) (citing *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996)). As the Seventh Circuit has noted, "it is the rule of this Court that in order for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions." *Id.* (citations omitted). In *Gallo-Vasquez v. United States*, 402 F.3d 793, 800 (7th Cir. 2005), the Seventh Circuit reaffirmed that a petitioner is required to submit more than conclusory allegations to support an ineffective assistance claim. Moreover, a § 2255 petition is properly dismissed without a hearing when the record conclusively demonstrates that the defendant is not entitled to relief. *United States v. Kovic*, 830 F.2d 680, 682 (7th Cir. 1987) (further citation omitted).

Dallum contends that Attorney Cornia was constitutionally ineffective. "To prevail on an ineffective-assistance-of-counsel claim under *Strickland*, a petitioner must

6

demonstrate that his counsel's assistance was objectively unreasonable and resulted in a substantial risk of prejudice." *Brown v. Finnan*, 598 F.3d 416, 419 (7th Cir. 2010); see also *United States v. Bethel,* 458 F.3d 711, 716-17 (7th Cir. 2006)(citation omitted). The same standard applies to claims of deficient appellate counsel. *Gant v. United States,* 627 F.3d 677, 682 (7th Cir. 2010).

The review of an attorney's performance is "highly deferential" and the Court starts with the presumption of effectiveness. *Berkey v. United States*, 318 F.3d 768, 772 (7th Cir. 2003). Only when the petitioner comes forward with "specific acts or omissions of his counsel that constitute ineffective assistance" will the Court consider "whether these acts or omissions were made outside the wide range of professionally competent assistance." *Id.*

Proof of both deficient performance and prejudice are necessary, and the lack of either one is fatal to the claim. See *Gant v. United States*, 627 F.3d at 682 and *Eddmonds v. Peters,* 93 F.3d 1307, 1313 (7th Cir. 1996). Dallum must show that "counsel's actions were not supported by a reasonable strategy and that the error was prejudicial." *United States v. Cooper,* 378 F.3d 638, 640-641, (7th Cir. 2004), quoting *Massaro v. United States,* 538 U.S. 500 (2003). "Defense counsel is 'strongly presumed to have rendered adequate assistance and to have made significant decisions in the exercise of his or her reasonable professional judgment.' (citation omitted). Courts presume that counsel made reasonable strategic choices unless the defendant presents evidence rebutting that presumption.' (citation omitted)." *Id,* at 641.

Analysis

Dallum's claims are meritless: some, however, require more extended analysis and some less. The government starts with those that are easily dispatched and ends with those requiring a more detailed discussion. Although the government takes them out of order, the numbers that Dallum assigns the issues are referenced at the outset.

(**Ground 2, 11-cv-00067-bbc, Document 1, p. 5**). Dallum claims that Attorney Cornia failed to request that the time he spent in custody of the U.S. Marshals during the federal prosecution should be credited to his sentence. To put this claim in context, two additional facts are noted. First, to face the federal charges Dallum was writted out from the Wisconsin Department of Corrections (R. 4) where he then was serving his Douglas County 30-month sentence for sexually assaulting Individual A. (PSR ¶ 51). Second, this Court directed that Dallum's federal sentence run concurrently to Dallum's undischarged state sentence. (R. 93, p. 2).

Dallum has two big problems with his argument concerning calculation of credit for his federal sentence. First, Dallum was already in custody serving his state sentence when the Marshals picked him up. He was not in custody "as a result of the offense for which the sentence was imposed" and thus, he is entitled to no credit. See 18 U.S.C. § 3585(b)(1). Second, the Bureau of Prisons, not the Court, is charged with calculating credit under § 3585(b). See *United States v. Wilson*, 503 U.S. 329, 334-35 (1992); *United States v. Ross,* 219 F.3d 592, 594 (7th Cir. 2000). Since the § 3585(b) calculation occurs post-sentencing within the Bureau of Prisons, it follows that Attorney Cornia could not

have been ineffective at sentencing regarding the credit to be attributed to Dallum's federal sentence.

Next are a series of claims that can, for the most part, be dealt with collectively because the claims are both wholly unsupported and Dallum fails to explain why the allegations, if true, caused unfair prejudice. Dallum claims that the government argued that the PSR was inaccurate at sentencing and that Cornia should have responded. (**Ground 3, 11-cv-00067-bbc, Document 1, p. 7**). Nothing in the transcript supports Dallum's claims that the government argued at sentencing that the PSR was inaccurate. (R. 105, pp. 6-12). Mr. Cornia is not required to respond to arguments that were never made.

Next, although he provides no transcript, Dallum claims that during a "pro se" hearing (there was only one *ex parte* hearing, on April 8, 2008 (R. 36)), the Magistrate intimidated him into pleading guilty. (**Ground 7, 11-cv-00067-bbc, Document 1, p. 9**). According to Dallum, Magistrate Crocker intimidated him by saying that the charges were serious (undoubtedly, a true statement), that he was looking at a substantial amount of time (also true), and that "once the government made a case, it rarely loses a case." While the last part of the alleged-Magisterial warning, as recounted by Dallum, contains the ambiguous phrase "made a case," it is fair to say that most charged cases result in conviction. If the Magistrate's alleged frank warning intimidated him at all, Dallum apparently got over it. Dallum got a new lawyer appointed (R. 39), who fought the case for the next five months until Dallum, on the eve of trial, elected to plead

9

guilty. (R. 81). Dallum does not explain how the alleged comments made five months prior to his guilty plea lingered to the degree that he was intimidated into a guilty plea. Dallum has failed to offer either proof of genuine intimidation or explain prejudice.

Dallum claims that the government threatened him with more superseding indictments. (**Ground 8, 11-cv-00067-bbc, Document 1, p. 10**). Nothing in the record supports this claim. On June 30, 2008, the trial was set for September 15, 2008 (R. 58). In June 2008, all parties then expected the case to go to trial and the government had already announced that it would seek a second superseding indictment (see R. 58), which it did in short order. (R. 61). Nothing in the record suggests that the government planned to seek further charges when Dallum pled guilty on September 5, 2008. (R. 81). On the contrary, the record shows that both parties were preparing for trial. (See e.g., R. 69--Government's Final Pretrial Submission).

Dallum claims he had insufficient time to consider the first proffered agreement and that he was rushed to sign the plea agreement before pleading guilty. (**Ground 6, 11-cv-00067-bbc, Document 1, p. 9**). Dallum does support the first claim on this point and his statements at his guilty plea hearing undermine his second claim. (R. 104, pp. 3-4)(Dallum agrees that he has had enough time to talk with Attorney Cornia about possible defenses to the charges and about the consequences of his guilty plea).

Dallum claims that Attorney Cornia had access to computer and psychological experts but failed to use them. (**Ground 5, 11-cv-00067-bbc, Document 1, p. 9**). These claims are unsupported and no prejudice is shown. Dallum faces a real struggle in

10

explaining how a computer expert would have helped. After all, he stored a significant part of his child pornography collection on CDs which he, personally, labeled by hand with names that correlated with the child pornography contents. (R. 104, pp. 13-14 and R. 105, pp. 8-10).

Dallum claims that Cornia should have objected to "irrelevant enhancements" at sentencing. (**Ground 4, 11-cv-00067-bbc, Document 1, p. 8**).[2] This argument is puzzling. "Irrelevant" enhancements were the least of Dallum's sentencing concerns; his real problem was that his criminal conduct made a number of enhancements painfully relevant to him: Dallum possessed images of children younger than twelve engaged in sexually explicit conduct (§ 2G2.2(b)(2)(PSR ¶ 34)); among those were sadistic images (§ 2G2.2(b)(4) (PSR ¶ 35)); the total number of images well exceeded 600 (§ 2G2.2(b)(7)(D)(PSR ¶ 38)); Dallum had repeatedly sexually assaulted a minor (§ 2G2.2(b)(5)(PSR ¶ 36)); and he used a computer to both collect and distribute child pornography ((§ 2G2.2(b)(2)(PSR ¶ 37) and § 2G2.2(b)(1)(3)(F)). Dallum's criminal conduct led directly to the unpalatable–from the defense standpoint–guideline calculation and thus Cornia had little choice but to mount an all-or-nothing assault on

---

[2] Dallum does not articulate why application of a particular guideline worked a "miscarriage of justice" in his case. Typically, guidelines disputes are not cognizable in a 2255 petition. See *United States v. Pregent*, 190 F.3d 279, 284 (4th Cir.1999) ("Thus, while § 2255 applies to violations of statutes establishing maximum sentences, it does not usually apply to errors in the application of the Sentencing Guidelines."); *Auman v. United States*, 67 F.3d 157, 161 (8th Cir.1995) ("While section 2255 does provide relief for cases in which 'the sentence was in excess of the maximum authorized by law,' this provision applies to violations of statutes establishing maximum sentences, rather than garden-variety Sentencing Guideline application issues.").

the applicable guideline itself. Although the argument failed before the Seventh Circuit, it was neither strategically nor constitutionally deficient.

That leads to the final issue for analysis. Parroting the Seventh Circuit, Dallum claims that his attorney filed an "unacceptable" appellate brief by cutting and pasting into his own brief 30 pages of an article written by a Federal Public Defender. (**Ground 1, 11-cv-00067-bbc, Document 1, p. 4**). As noted above, Dallum's conduct led to a high guideline calculation. The facts leading to the guideline calculation were indisputable. Attorney Cornia had little choice at sentencing or on appeal but to mount a frontal attack on the guideline itself. Recall that this Court agreed in part with Attorney Cornia and gave Dallum a below-guideline sentence as a result. (R. 105, p. 26)("I do think that what Mr. Cornia says about the guidelines has some real substance to it. ... I have concerns, but I think those concerns can be met with a lower sentence.").

Further, although the Seventh Circuit rejected Attorney Cornia's argument, similar arguments have succeeded in other courts. *United States v. Dorvee*, 604 F.3d 84 (2d Cir.2010); *United States v. Grober*, 595 F.Supp.2d 382 (D.N.J.2008); *United States v. Baird*, 580 F.Supp.2d 889, 893-94 (D.Neb.2008); *United States v. Shipley*, 560 F.Supp.2d 739, 744 (S.D.Iowa 2008); *United States v. Hanson*, 561 F.Supp.2d 1004, 1010-11 (E.D.Wis.2008); and *United States v. Johnson*, 588 F.Supp.2d 997, 1003-04 (N.D.Iowa 2008). Cornia was not ineffective for raising these arguments to the Seventh Circuit.

The problem was not Mr. Cornia's using the article *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* 22-23

(June 10, 2008), http://www. fd. org/ pdf_ lib/ Deconstructing the Child Pornography Guidelines 6.10.08.pdf).  The problem was Dallum himself.  Dallum's conduct--involving repeated hands-on sexual assault of a minor, collection and distribution of violent, sexually explicit images involving of small children, and so on--made the generic arguments in the article about an otherwise harmless collector ring hollow.

Dallum's job here is not to show that Mr. Cornia's brief should have been more carefully tailored to his own facts.  Rather, for Dallum's petition to succeed, he must as a preliminary matter show prejudice--that a different appellate argument would have resulted in a remand and a lower sentence.  Dallum does not articulate such a winning argument and, by extension, fails to show prejudice.  While it is difficult to argue against a hypothetical argument, the Seventh Circuit made clear its view that Dallum's sentence was reasonable.  (R. 111, p. 3).

Conclusion

For the above-stated reasons, the United States respectfully requests that Dallum's petition be denied.

Dated this 23rd day of February, 2011.

    Respectfully submitted,

    JOHN W. VAUDREUIL
    United States Attorney

    By:    /s/

    TIMOTHY M. O'SHEA
    Assistant U.S. Attorney